A. S. JEWELL AND J. R. JEWELL v. POLLY E. JEWELL, ADMINISTRATRIX OF THE ESTATE OF GEORGE C. JEWELL, DECEASED.

DECEASED HUSBAND'S HALF OF COMMON PROPERTY.—Upon the death of the husband intestate, leaving no descendants, the surviving wife and surviving father of the deceased each inherit one half of the common property.

DEFINITION OF "DESCENDANTS."—The "descendants" of a person are his children, grandchildren, and their children to the remotest degree.

SURVIVING WIFE.—The surviving wife inherits one half of the common property if the husband dies leaving descendants.

ONE HALF THE COMMON PROPERTY.—In this State, prior to April 4, 1864, if the husband died leaving a wife and descendants, the descendants inherited one half the common property, and it was not subject to the husband's testamentary disposition. But if the husband died, leaving a wife and no descendants, one-half the common property was subject to the husband's testamentary disposition.

APPEAL from the Probate Court, Sonoma County.

The facts are stated in the opinion of the Court.

*A. W. Thompson*, for Appellants.

The only question now, therefore, to be considered is, who are the *descendants*, and whether that word can properly be used with reference to the father. Words must be regarded in the sense in which they are used by the Legislature rather than by their abstract meaning. "If he or she shall leave no issue, or husband, or wife, the estate shall go to his or her

father." (Descents and Distributions, Statutes 1861, p. 570, latter part of second section.)

If such had been here the state of facts, would not the estate have fallen to the father, and would he not have then, as to the estate, been the descendant of the husband?

By the rule of estates held under strict feudal tenure, where from the nature of things the father could not have done military service, the estate might, at a very early period in the history of our laws, have even escheated for the want of a "descendant;" but, even at common law, the strict rule that descents (using the word in its technical sense) must always be downward, has been disregarded, and in tracing descents we must necessarily ascend in very many cases.

The word "descendant" means in the statute one who could properly take by descent, and in that sense is constantly used in the books. "Property of lands by descent is," says Lord Bacon, "where a man hath lands of inheritance, and dieth, not disposing of them, but leaving it to go (as the law casteth it) upon the heir. This is called a descent of law." (2 Washburn on Real Property, 401.)

"The rules of *descent* prescribed by the statutes of the several United States are as follows: In Alabama the real estate of an estate descends. * * * In California, I. * * * II. If there be no issue, then to the surviving husband or wife, and to the intestate's father in *equal shares.*" (2 Washburn on Real Property. Note—Statute Rules of Descent, pp. 417, 418.)

"But in default of such brothers and sisters and their issue, the estate *descends to the father in fee simple.*" (4 Kent Com. 393.)

*E. D. Colton,* for Respondent.

A brief examination of the statutes (Sec. 11 of the "Act defining the rights of husband and wife," Statutes 1862, p. 211, and Sec. 1 of the "Act to regulate descents and distributions," Statutes 1862, p. 569) will show that appellant's definition of the word "descendants" used in section 11 is incor-

rect, and that the word "descendants" is not synonymous with "kindred" and does not include father, etc. If we substitute the word *kindred* in the place of the word *descendants* in section 11, it will read as follows:

"SEC. 11. Upon the dissolution of the community by the death of the husband, one half of the common property shall go to the surviving wife, and the other half to the *kindred* of the deceased husband, the whole being subject to the payment of his debts. Upon the dissolution of the community by the death of the wife, the entire common property shall go to the surviving husband. In case of the death of the husband, if there be no *kindred* of the husband, one half of the common property may be subject to his testamentary disposition, and in the absence of any such disposition, shall be subject to distribution *in the same manner as the separate property of the husband.*"

Now the separate property of the husband (Statutes 1862, pp. 569, 570) is distributed to the kindred, (and husband and wife,) and in default of kindred (and husband and wife) it escheats to the State.

Putting these two statutes together, they would read in effect: "*If there are no kindred of the husband, then one half of the common property shall be distributed among the kindred of the husband,*" which makes them absurd.

Again: by one statute, if there are no kindred, the property would be distributed; by the other, if there are no kindred, it would escheat to the State. There is no pretence that the one Act was intended to or did repeal the other.

Taking section 11 alone as a full disposition of the whole common property, and appellant's definition of the word *descendants* would make the section absurd. It would provide: 1st. That the wife takes half and the *kindred* half. 2d. If no *kindred*, one half is to be distributed. Distributed to whom? To the world generally? But to get this other half of the common property into the father, appellants are compelled to resort to section one, subdivision second, of the

"Act to regulate descents and distributions," Statutes 1862, p. 570, and that provides that it shall go, one half to the surviving wife and one half to the father.

If the word. *descendants* in section eleven means kindred, then appellants have got too much already. Their ground is that they take by virtue of the first part of section eleven, that the husband died, leaving a surviving wife and *descendants*, that is, *kindred*, viz: a father, etc., and that therefore the surviving wife takes one half and the *descendants* take the other half. The word "kindred" includes all kin to the remotest degree—it would not be the *next of kin* who would take by virtue of section eleven, but *all kindred*, to the remotest degree. There are undoubtedly ten thousand persons who are kin to the intestate in some degree. By section eleven they would all take *equally*, and hence the judgment would give the appellants too much.

By the Court, RHODES, J.

George C. Jewell died intestate March 27th, 1863, leaving a widow (the respondent) and a father, but neither a child, nor the issue of a deceased child. The estate of the intestate was common property of the deceased husband and his wife. The father of the deceased conveyed his interest in the estate to seven of his children—the petitioners being two of the number. Upon their petition to the Probate Court for the distribution of the estate, it was ordered that one half of the estate be distributed to the widow, for her interest in the common property, as the survivor of the community, and that of the remaining half of the estate, one half thereof should go to the widow and the other half to purchasers from the father of the deceased.

The petitioners appeal. For convenience of designation one half of the common property may be called the husband's half, and the other the wife's half. It is not doubted that the widow, as the survivor of the community, is entitled to her half of the community property, and the only question pre-

sented on the appeal, is whether she takes any portion of the husband's half, under the Statute of Descents and Distributions, as amended in 1862.

The eleventh section of the Act of 1850, defining the right of husband and wife, as amended in 1861 (Statutes of 1861, p. 310) is as follows:

" SECTION 11.  Upon the dissolution of the community by the death of the husband, one half of the common property shall go to the surviving wife and the other half to the descendants of the deceased husband, the whole being subject to the payment of his debts; upon the dissolution of the community by the death of the wife, the entire common property shall go to the surviving husband.  In case of the death of the husband, if there be no descendants of the husband, one half of the common property may be subject to his testamentary disposition, and in the absence of any such disposition, shall be subject to distribution in the same manner as the separate property of the husband."

The question is to be solved by ascertaining the meaning of the word " descendants " as employed in that section.  Bouvier defines descendants as " those who have issued from an individual, and includes his children, grandchildren and their children to the remotest degree.  The descendants form what is called the direct descending line.  The term is opposed to that of ascendants."  Those who are denominated descendants do not comprise all of those who come to the title by descent. It is apparent, upon inspection of section eleven, above cited, that the term descendants does not include the ascending line. It is provided in the last clause of the section, that the husband's testamentary disposition of his half of the common property, shall be valid, if the husband shall die leaving no descendants, and that if such testamentary disposition shall not have been made, then it shall be distributed in the same manner as the separate property of the husband; that is to say, according to the Statute of Descents and Distributions.

Previous to the amendment of 1861, it was provided, that upon the dissolution of the community by the death of the husband or the wife, one half of the common property should go to the survivor and the other half to the descendants of the deceased, and if there were no descendants of the deceased, then to the survivor. The amendment of 1861, not only gave the whole common property to the husband upon the death of the wife, whether she left descendants or not, but it limited the right of the surviving wife, growing out of the community relation, to her half, without regard to whether or not the deceased husband left descendants, and the husband's half, which would go to his descendants under the Act of 1850, would still go to them under the amendatory Act of 1861, but the amendatory Act, instead of giving the husband's half to the surviving wife upon the failure of descendants of the deceased husband, has in effect converted it into the separate estate of the husband, and as such has made it subject to his disposal by will, and in the absence of such disposition, directed it to be distributed according to the Statute of Descents and Distributions.

By adopting the construction of the appellants, that "descendants" are all those who may properly take by descent, we are led into this absurd construction of the section just cited. The husband would be authorized to make a testamentary disposition of his half of the common property, only in case there was no one entitled to take by descent; and if the husband has not made a testamentary disposition of it, and has left no descendants—that is, no persons entitled to take by descent—then it shall be distributed among his descendants.

We are clearly of the opinion that the husband's half of the common property, it not being disposed of by his will, and he leaving no descendants, must be distributed according to the provisions of the second clause of section one, of the Act to regulate descents and distributions, as amended in 1862, and that according to the rule in that clause, the surviving wife and the father of the deceased were each entitled to the

one half of the husband's half of the common property. The purchasers from the father are of course entitled to his share. Order affirmed.