In the Matter of the Estate of ROBERT H. COMEY, Deceased.

Surrogate's Court, Kings County, February 17, 1940.

*Cullen & Dykman* [*Arthur Gunther* of counsel], for the Brooklyn Trust Company, as trustee, petitioner.

*Angelo John Cincotta*, special guardian for infant contingent remaindermen.

WINGATE, S. A proper determination of the questions raised in the present proceeding is rendered the more difficult by reason of the fact that none of the interested parties have seen fit to appear in answer to the citation and the sole participants are the accounting trustee itself and the special guardian appointed to protect the interests of certain infants, both of whom agree in the advocacy of a certain result although they are not in complete accord as to the method of its attainment. They concur also in the statement that no regularly published precedent is discoverable which sheds light on the solution of the problem. With this latter conclusion, independent research inclines the court to agree.

The will of this decedent was probated in this court on January 13, 1931. By its " tenth " item the testator erected a trust for his daughter, Miriam, in the custody of Brooklyn Trust Company, as trustee, providing that on her death the trustee should " pay over the whole principal * * * to such of the descendants of said Miriam Comey Adams, in such amounts, shares and proportions and *upon such estates* as she may by her Last Will and Testament designate and appoint." (Italics supplied.)

At the time of his death, Miriam was living as were her two sons, Paul and Robert. She died on January 17, 1939, a domiciled resident of Pennsylvania, leaving a will which has been duly probated in that State by the terms of which she erected the residue of her estate, expressly including any property over which she possessed a power of appointment, into two equal trusts, with Brooklyn Trust Company as trustee, for the benefits of her two sons, Paul and Robert, who were still living at the time of her death. Brooklyn Trust Company has failed to qualify as a trustee under Miriam's will, and, in fact, no trustee has been appointed.

Brooklyn Trust Company now propounds to this court four questions respecting the manner of disposal of the remainder of this trust of which Miriam was the life beneficiary, namely, *first*, whether she validly exercised the power of appointment accorded her by the will of her father; *second*, if so, whether Brooklyn Trust Company is to continue to act as trustee under the will of the father in executing the directions of Miriam; *third*, if not, whether it may qualify under Miriam's will in this court and administer pursuant to its directions; and *fourth*, as to the identity of the distributees of the remainder, and the shares and proportions to which they are entitled.

Approaching the question of the validity of the exercise of the power of appointment, there are here, as in all such evaluations, two questions for determination, namely, *first*, whether the directions made by the donee complied with any limitations imposed by the donor in respect of the manner of exercise; and *second*, if this be answered in the affirmative, whether the composite direction for devolution of the property in question infringes any rule of law when the wills of the donor and donee are construed as a composite entity.

The power accorded was a special and not a general power, since it limited appointment to the " descendants " of Miriam. The usual connotation of " descendants " is " lineal issue." (See definitions of " descendants " in Century Dict., Webster's Dict., Standard Dict.; *Matter of Marsh*, 143 Misc. 609, 617; *Mitchell* v. *Thorne*, 134 N. Y. 536, 540; *Matter of Moore*, 90 Hun, 162, 167; *Matter of Dudley*, 168 Misc. 695, 697.) There is no indication that the present testator employed the word in any different sense. The only persons, therefore, to whom the daughter was authorized to appoint this remainder were her two sons, Paul and Robert, or their descendants, employing the term with the same significance.

She actually appointed one-half of the fund for the benefit of each of these sons on trusts to receive the income, with rights to withdraw half of the principal at the age of thirty and the balance at forty. Each was accorded a power of appointment to his

descendants. Upon failure of exercise, the remainder is given, *first*, to the descendants of the particular primary *cestui que trust*, *second*, to the descendants of Miriam; and, *finally*, if there are none in either class, to the descendants, *per stirpes*, of Miriam's brother and sister.

Obviously, all of these directions, except the last, are strictly within the authority granted by the donor. The last is not, but this is an entirely immaterial circumstance both by reason of the extreme remoteness of its occurrence and because the ultimate contingent donees are the same persons who would be entitled to take under the will of the testator if the exercise of the power in this aspect were deemed unauthorized.

The question is further presented as to whether the power was accorded to the donee to appoint other than an absolute fee. The words of the grant hereinbefore italicized require an affirmative answer. (*Beardsley* v. *Hotchkiss*, 96 N. Y. 201, 218, 219; *Hillen* v. *Iselin*, 144 id. 365, 377; *McLean* v. *McLean*, 174 App. Div. 152, 157; affd., 223 N. Y. 695.) *Matter of Kennedy* (279 N. Y. 255) is not an authority to the contrary but is merely an interpretation of the extent of the power accorded under the will which was there the subject of construction. (See p. 263.) Indeed, the court goes to some pains (p. 262) to differentiate the language there employed from that which was construed in *Matter of Colt* (154 Misc. 843), which latter is identical with that in the case at bar.

It is, accordingly, determined that the exercise by Miriam of the power of appointment accorded to her was in accordance with the intention of the donor except in the remote and presently immaterial contingency that both of her sons died prior to the age of forty without descendants.

The second inquiry respecting the validity of exercise of the power of appointment, namely, its legal permissibility, is determinable in a word. The alienability of the assets in question had been restrained for only a single life, namely, that of Miriam, by the will of her father. As to each half, she erected a trust for only a single additional life, and both were in being at the death of the testator. There is, therefore, no improper suspension. (Real Prop. Law, § 42; Pers. Prop. Law, § 11; *Matter of Terwilligar*, 135 Misc. 170, 175; affd. on opinion of this court, 230 App. Div. 763.)

The second question, as to whether Brooklyn Trust Company is to continue to act as trustee under the will of the donor, is one presenting somewhat greater difficulty, but appears to be readily solvable when the basic theory of a power of appointment is recalled. This, as stated by Chancellor Kent (4 Kent's Com. 338), repeated in *Matter of Harbeck* (161 N. Y. 211, 218) and reiterated in other,

almost numberless, authorities, is that " An estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of a power, takes under the authority and under the grantor of the power * * * in like manner as if the power and the instrument creating the power had been incorporated in one instrument." The source of the title of the donees of the fund is the original will " and into that instrument must be read the names of the appointees, although designated by a later instrument. For those who take under a power of appointment, take as if their names were in the grant of the power." (*Matter of Harbeck*, 161 N. Y. 211, 218. See, also, *Hirsch* v. *Bucki*, 162 App. Div. 659, 671; *Matter of Terwilligar*, 142 Misc. 249, 252, and authorities cited.)

In the opinion of the court the clue to the correct solution of the present problem is contained in the intimation contained in the foregoing quotation from Chancellor KENT that the valid exercise of the power has " been incorporated in " the will of the donor by reference. This doctrine was applied by the Court of Appeals in *Matter of Piffard* (111 N. Y. 410, 415), in which it was held that the will of a daughter " is referred to, * * * to define and make certain the proportions in which the one-fifth should pass by the father's will." (See, also, *Matter of Fowles*, 222 N. Y. 222.)

This would seem merely a logical application of the modern doctrine of incorporation by reference as defined in *Matter of Rausch* (258 N. Y. 327), which appears to be that incorporation of any document in this manner is permissible so long as it is clearly identified and is of a variety which excludes any reasonable possibility of chicanery or mistake."

The court, accordingly, determines that Brooklyn Trust Company, as trustee under the will of Robert H. Comey, has the power and is under the obligation to continue to hold and administer the property now in its hands in the manner directed in the duly probated will of Miriam Comey Adams in like manner as if the former had contained the directions respecting such continued holding and management which were included in the latter, at least so far as the trusts for Paul Comey Adams and Robert Mellor Adams are concerned.

In view of the result obtained, the third question of the trustee becomes unnecessory of consideration. The fourth is presently academic and will not be answered.

Enter decree on notice in conformity herewith.